1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Sean Pak (Bar No. 219032 (CA))
2  seanpak@quinnemanuel.com
   Antonio M. Sistos (Bar No. 238847 (CA))
3  antoniosistos@quinnemanuel.com
   Brian E. Mack (Bar No. 275086 (CA))
4  brianmack@quinnemanuel.com
   50 California Street, 22nd Floor
5  San Francisco, California 94111
   (415) 875-6600
6  (415) 875-6700 (facsimile)

7  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Patrick D. Curran (Bar No. 241630 (CA))
8  patrickcurran@quinnemanuel.com
   51 Madison Avenue, 22nd Floor
9  New York, New York 10010
   (212) 849-7000
10 (212) 849-7100 (facsimile)

11 QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Meghan Bordonaro (Bar No. 269236 (CA))
12 meghanbordonaro@quinnemanuel.com
   555 Twin Dolphin Drive, 5th Floor
13 Redwood Shores, California 94065
   (650) 801-5000
14 (650) 801-5100 (facsimile)

15 Attorneys for Plaintiff GOOGLE INC.

16

17              UNITED STATES DISTRICT COURT

18            NORTHERN DISTRICT OF CALIFORNIA

19 GOOGLE INC.,                          CASE NO. 5:16-cv-04173-LHK

20          Plaintiff,                   **PLAINTIFF GOOGLE INC.'S
                                         OPPOSITION TO DEFENDANTS'
21      vs.                              MOTION TO DISMISS FOR LACK OF
                                         PERSONAL JURISDICTION OR, IN THE
22 IXI MOBILE (R&D), LTD., and           ALTERNATIVE, TRANSFER VENUE**
   IXI IP, LLC,
23                                       **REDACTED VERSION OF DOCUMENT
                                         SOUGHT TO BE SEALED**
24          Defendants.
                                         Date:   November 17, 2016
25                                       Time:   1:30 PM
                                         Judge:  Hon. Lucy H. Koh
26                                       Place:  Courtroom 8, 4th floor

27                                       Action Filed:  July 25, 2016
                                         Trial Date:  TBD
28

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ...................................................................................................1

II.   FACTUAL BACKGROUND ..................................................................................2

      A.    IXI And The '124 Patent Have Strong Connections To California ............2

      B.    IXI Has Directed Numerous Patent Enforcement Activities Into California ............2

      C.    IXI Has No Meaningful Contacts With Texas .........................................4

      D.    Google's Home Is In The Northern District Of California, And Relevant
            Witnesses And Evidence Are Undeniably Located Here............................5

III.  THIS COURT HAS PERSONAL JURISDICTION OVER IXI ............................5

      A.    Legal Standard...........................................................................................5

      B.    IXI Has The Minimum Contacts With California Required For This Court's
            Exercise Of Specific Jurisdiction .............................................................6

            1.    IXI's relationship to IXI Mobile, Inc. supports personal jurisdiction ............6

            2.    IXI's patent prosecution activities are purposefully directed toward
                  this forum and support personal jurisdiction...............................7

            3.    IXI's licensing and enforcement activities are purposefully directed
                  toward this forum and support personal jurisdiction...................7

            4.    IXI seeks to dissect and discount individual facts and fails to address
                  the facts as a whole..............................................................9

            5.    IXI's legal authorities are inapposite, or support Google ............10

      C.    The Exercise Of Personal Jurisdiction Over IXI Is Reasonable And Fair ..............13

      D.    In The Alternative, The Court Should Permit Google To Conduct
            Jurisdictional Discovery, Or Transfer This Case To the Southern District Of
            New York ..................................................................................................13

IV.   VENUE IS PROPER IN THE NORTHERN DISTRICT OF CALIFORNIA....................15

      A.    The Northern District of California Is The Most Convenient Forum ......15

            1.    The interests of justice strongly favor California.........................16

            2.    California is more convenient for almost all party and non-party
                  witnesses...............................................................................17

            3.    The Northern District of California is more convenient for the
                  parties ....................................................................................20

4.  Google's choice of forum should control ...................................................20

5.  Relevant agreements were negotiated and executed in California..............21

6.  Both IXI and Google have substantial contacts with California ................22

7.  The contacts relating to Google's cause of action are all in this District ...................................................................................................23

8.  The differences in the costs of litigation in the two forums........................23

9.  The availability of compulsory process .......................................................23

10. The ease of access to sources of proof favors this District .........................24

B.  *DataTern* and *Straight Path* Are Inapposite ........................................................24

V.  CONCLUSION ..................................................................................................25

# TABLE OF AUTHORITIES

**Page**

### Cases

*Activevideo Networks, Inc. v. Trans Video Elecs. Ltd.*,
  975 F. Supp. 2d 1083 (N.D. Cal. 2013) ...................................................................8, 9

*Affinity Labs of Texas v. Samsung Elecs. Co., Ltd.*,
  2013 WL 5508122 (E.D.Tex.) ......................................................................................17

*Altera Corp. v. Papst Licensing Co.*,
  No. 15-1914, Dkt. 13 (Fed. Cir. Jun. 9, 2016) ....................................................12, 13

*Amazon.com, Inc. v. Straight Path IP Grp. Inc*,
  No. 5:14-CV-04561-EJD, 2015 WL 3486494 (N.D. Cal. May 28, 2015)......................25

*Amity Rubberized Pen Co. v. Mkt. Quest Grp., Inc.*,
  793 F.3d 991 (9th Cir. 2015).................................................................................14, 15

*Avocent Huntsville Corp. v. Aten In'l Co.*,
  552 F.3d 1324 (Fed. Cir. 2008)....................................................................6, 10, 11

*Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*,
  444 F.3d 1356 (Fed. Cir. 2006).....................................................................................12

*Calix Networks, Inc. v. Wi-Lan, Inc.*,
  No. 09-6038, 2010 U.S. Dist. LEXIS 97657 (N.D. Cal. Sept. 8, 2010) ...................14

*Celegard, LLC v. SK Innovation, Co.*,
  792 F.3d 1373 (Fed. Cir. 2015).....................................................................................11

*Ctr. for Biological Diversity v. Kempthorne*,
  No. 08-1339, 2008 U.S. Dist. LEXIS 84978,
  2008 WL 4543043 (N.D. Cal. Oct. 10, 2008) .........................................................16

*Daimler AG v. Bauman*,
  134 S. Ct. 746 (2014) ...............................................................................................9, 10

*Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*,
  557 F.2d 1280 (9th Cir. 1977)......................................................................................14

*Decker Coal v. Continental Edison*,
  805 F.2d 834 (9th Cir. 1986).........................................................................................21

*Elecs. For Imaging, Inc. v. Coyle*,
  340 F.3d 1344 (Fed. Cir. 2003).............................................................................6, 7, 8

*Futurewei Techs., Inc. v. Acacia Research Corp.*,
  737 F.3d 704 (Fed. Cir. 2013).......................................................................................25

*In re Genentech, Inc.*,
  566 F.3d 1338 (Fed. Cir. 2009).....................................................................................18

*Genetic Implant Sys., Inc. v. Core-Vent Corp.,*
   123 F.3d 1455 (Fed. Cir. 1997) ...................................................................................7

*Goodyear Dunlop Tires Operations, S.A. v. Brown,*
   131 S. Ct. 2846 (2011) ...........................................................................................10

*In re Google Inc.,*
   588 Fed. Appx. 988 (Fed. Cir. 2014) ...................................................................26

*Google Inc. v. Eolas Techs., Inc.,*
   No. 3:15-cv-05446-JST, 2016 U.S. Dist. LEXIS 78842 (N.D. Cal. June 16, 2016) .............6, 7

*Google Inc. v. Rockstar Consortium U.S. LP,*
   No. C 13-5933 CW, 2014 WL 1571807 (N.D. Cal. Apr. 17, 2014) .......................17, 18, 25, 26

*Harris Rutsky & Co. Ins. Serv. v. Bell & Clements,*
   328 F.3d 1122 (9th Cir. 2003)...............................................................................14

*In re Hoffman-La Roche,*
   587 F.3d 1333 (Fed. Cir. 2009) ............................................................................17

*IXI Mobile (R&D) Ltd. et al. v. Apple, Inc.,*
   No. 3:2015-cv-03755-HSG ......................................................................................4

*IXI Mobile (R&D) Ltd. et al. v. Blackberry Limited et al.,*
   No. 3:2015-cv-03754-HSG ......................................................................................4

*IXI Mobile (R&D) Ltd. et al. v. LG Corp. et al.,*
   No. 3:15-cv-05442-HSG .........................................................................................4

*IXI Mobile (R&D) Ltd. et al. v. Lenovo Group Ltd. et al.,*
   No. 3:15-cv-05439-HSG .........................................................................................4

*IXI Mobile (R&D) Ltd. et al. v. Samsung Electronics co., Ltd. et al.,*
   No. 3:2015-cv-03752-HSG ......................................................................................4

*IXI Mobile (R&D) Ltd. v. Samsung Electronics Co., Ltd.,*
   No. 1:14-cv-04355-RJS, 2015 WL 4720293 (S.D.N.Y. Aug. 6, 2015) ...........................4, 8, 15

*Inamed Corp., et al. v. Kuzmak,*
   249 F.3d 1356 (Fed. Cir. 2001) ............................................................................13

*International Shoe v. State of Washington,*
   326 U.S. 310 (1945) ..............................................................................................10

*Jones v. GNC Franchising, Inc.,*
   211 F.3d 495 (9th Cir. 2000).............................................................................16, 22

*Juniper Networks, Inc. v. Altitude Capital, L.P.,*
   No. 09-03449, 2010 WL 5141839 (N.D. Cal. Dec. 13, 2010) ................................8

*Microsoft Corp. v. DataTern, Inc.,*
   755 F.3d 899 (Fed. Cir. 2014) ..............................................................................25

*Neil Bros. Ltd. v. World Wide Lines, Inc.*,
    425 F. Supp. 2d 325 (E.D.N.Y. 2006).................................................................18

*Park v. Dole Fresh Vegetables, Inc.*,
    964 F. Supp. 2d 1088 (N.D. Cal. 2013) ...........................................15, 16, 23, 24

*Radio Sys. Corp.v. Accession, Inc.*,
    638 F.3d 785 (Fed. Cir. 2011)...........................................................................8

*Ranza v. Nike, Inc.*,
    793 F.3d 1059 (9th Cir. 2015), cert. denied, 136 S. Ct. 915 (2016) ...........................7

*Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*,
    148 F.3d 1355 (Fed. Cir. 1998)...........................................................................11

*Royal Queentex Enters. v. Sara Lee Corp., No. C 99-4787*,
    2000 U.S. Dist. LEXIS 10139 (N.D. Cal. Mar. 1, 2000) .........................................21

*SanDisk, Corp. v. Round Rock Research LLC*,
    No. 11-5243, Dkt. 60 at 5 (N.D. Cal. Feb. 16, 2012)............................................8

*Silent Drive, Inc. v. Strong Indus., Inc.*,
    326 F.3d 1194 (Fed. Cir. 2003)...........................................................................6

*Twentieth Century Fox Int'l Corp. v. Scriba*,
    385 F. App'x 651, 652 (9th Cir. 2010) ...............................................................14

*Various, Inc. v. Jedi Techs., Inc.*,
    No. 3:16-cv-01833-WHA, Dkt. 56 (N.D. Cal. Jul. 25, 2016)...............................8, 12

*Xilinx, Inc. v. Papst Licensing GMBH & Co., KG*,
    113 F. Supp. 3d 1027 (N.D. Cal. 2015),
    *vacated in part, Altera Corp. v. Papst Licensing Co.*,
    No. 15-1914, Dkt. 13 (Fed. Cir. Jun. 9, 2016) ..............................................11, 12

*Zoove Corp. v. Starpound Corp.*,
    No. 10-cv-06131-EJD (PSG), 2012 WL 3580526 (N.D. Cal. Aug. 17, 2012) .........................9


### Statutes

28 U.S.C. § 1404 ..............................................................................2, 13, 16, 23

28 U.S.C. § 1404(a) ............................................................................15, 25

28 U.S.C. § 1406 ..............................................................................14

28 U.S.C. § 1631 ..............................................................................14

Fed. R. Civ. P. 45(c)(1) ........................................................................24

## I.    <u>INTRODUCTION</u>

The motion to dismiss or in the alternative to transfer venue ("Mot.") filed by Defendants IXI Mobile (R&D) LTD. and IXI IP, LLC's (collectively, "IXI") should be denied.   This Court has personal jurisdiction over IXI, and Plaintiff Google's complaint for declaratory judgment of non-infringement of U.S. Patent No. 7,552,124 ("the '124 patent") should be heard here – in the Northern District of California.

IXI fails to rebut Google's *prima facie* showing that IXI has sufficient minimum contacts to justify personal jurisdiction.   Defendant patent holding company IXI IP, LLC and its exclusive licensee IXI Mobile (R&D), Ltd. are spun out of a common predecessor – IXI Mobile, Inc. – which was founded and located in Belmont, California.   IXI admits it engaged a California attorney to prosecute and obtain the '124 patent.   ████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████ IXI then availed itself of California courts and affirmatively filed and litigated patent infringement claims in this District.   IXI examines each of its contacts with California in isolation and argues that each standing alone does not confer personal jurisdiction over IXI.   But when those individual contacts are viewed as a whole, as they must be, it is clear that IXI has substantial contacts with this District.   Google satisfied its *prima facie* burden to show the existence of minimum contacts, and IXI fails to carry its heavy burden to show that the exercise of personal jurisdiction would not be reasonable and fair in light of that *prima facie* showing.

IXI also asks this Court to transfer Google's suit to the Eastern District of Texas, where IXI sued Google's customers for patent infringement.   But IXI's arguments are based on a false assertion.   Contrary to IXI's suggestion (Mot. at 12-14), there is no Federal Circuit precedent requiring Google to seek declaratory judgment in the jurisdiction where its customers have been sued.   To the contrary:   the Federal Circuit has required Texas actions against Google's customers to stand down in favor of declaratory judgment suits in California under analogous circumstances.   IXI also fails to note that the defendants in IXI's pending Texas suits have all filed transfer motions *to this District*, based on the Northern District of California's close

connection to the claims at issue and the relative absence of any meaningful connection to the Eastern District of Texas.   Moreover, as explained below, the convenience factors in 28 U.S.C. § 1404 all strongly favor the Northern District of California – including the location of relevant evidence, the convenience of non-party and party witnesses, the convenience of the parties, the location where relevant agreements were negotiated and executed, and the interests of justice. The Court should therefore keep this case in California.

## II.    FACTUAL BACKGROUND

### A.    IXI And The '124 Patent Have Strong Connections To California

IXI and the '124 patent have strong ties to California – indeed, both originated here.   The predecessor for both patent owner IXI IP, LLC and its exclusive licensee IXI Mobile (R&D) Ltd., IXI Mobile, Inc., was founded and located in Belmont, California.   That California corporate parent directed the organization while the '124 patent was being prosecuted, until at least 2008. Dkt. 1-1; Mot. at 6-7 n.6.   IXI Mobile, Inc. and its subsidiary IXI Mobile (R&D) Ltd. developed and commercialized products in California, including the IXI "Ogo" line of mobile devices.   *Id.* IXI Mobile, Inc. had a substantial California presence, including over 130 employees.   Ex. 1. Witnesses with knowledge about IXI Mobile, Inc.'s products, sales and marketing activities, and attempts to license the patented technology, are still located in this District.   For example, at least IXI Mobile, Inc.'s prior CEO, Amit Haller, resides in this District.   Ex. 2.

Moreover, as reflected on the face of the '124 patent, IXI retained agents in California to secure the '124 patent.   The '124 patent was prosecuted by a California attorney working at a California law firm:   Farshad Jason Far-hadian, of Century IP Law Group, located in Newport Beach, California.   Exs. 3, 4.   Mr. Far-hadian is an active member of the State Bar of California and is currently located in Newport Beach, California.   Ex. 4.   Notably, Mr. Far-hadian is one of only three witnesses IXI identified in its Initial Disclosures in Texas as having relevant information relating to the '124 patent.   Ex. 5.

### B.    IXI Has Directed Numerous Patent Enforcement Activities Into California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20    In addition to IXI's

21    , IXI also purposefully availed itself of the jurisdiction of the

22    Northern District of California, and has submitted to the jurisdiction of this Court.   IXI previously

23    litigated and is currently litigating offensive claims for infringement of at least four of its patents

24    in this District.   Just last year, IXI voluntarily initiated patent litigation in this District against

25    Lenovo and LG.   *IXI Mobile (R&D) Ltd. et al. v. Lenovo Group Ltd. et al.*, No. 3:15-cv-05439-

26    HSG; *IXI Mobile (R&D) Ltd. et al. v. LG Corp. et al.*, No. 3:15-cv-05442-HSG.

27    IXI is also litigating offensive claims for patent infringement in this District against Apple

28    – a California company – as well as Samsung and Blackberry in cases that were transferred to this



1   District from the Southern District of New York.   *IXI Mobile (R&D) Ltd. et al. v. Apple, Inc.*, No.

2   3:15-cv-03755-HSG; *IXI Mobile (R&D) Ltd. et al. v. Samsung Electronics co., Ltd. et al.*, No.

3   3:15-cv-03752-HSG; *IXI Mobile (R&D) Ltd. et al. v. Blackberry Limited et al.*, No. 3:15-cv-

4   03754-HSG.   Those cases were transferred to this District as the most appropriate forum to

5   determine IXI's patent rights, including based on IXI's admission that "***[t]here's absolutely no***

6   ***dispute***" that the Northern District of California would be an appropriate venue for IXI's patent

7   litigation.   *IXI Mobile (R&D) Ltd. et al. v. Samsung Electronics Co., Ltd.*, No. 1:14-cv-04355-

8   RJS, 2015 WL 4720293, at *2 (S.D.N.Y. Aug. 6, 2015) (emphasis added).

9         In addition to involving two of the same defendants that IXI has accused of infringing the

10   '124 patent, IXI's offensive patent litigation in this District involves the same subject matter at

11   issue here:   mobile communication devices and cellular networks.[1]   IXI's offensive patent

12   litigation in this District also involves similar accused products as those IXI has accused of

13   infringing the '124 patent.[2]   The patents were also prosecuted in California by the same

14   prosecuting attorney, Mr. Far-hadian, who prosecuted the '124 patent.   Exs. 13, 14.

15         **C.   IXI Has No Meaningful Contacts With Texas**

16         IXI has no connection with the Eastern District of Texas, aside from its decision to initiate

17   patent litigation there.   IXI has no employees in the Eastern District of Texas; no offices in the

18   Eastern District of Texas; sells no products in the Eastern District of Texas.   IXI points to no

19   historical operations based in the Eastern District of Texas, and identifies no agents in the Eastern

20   District of Texas that were used to obtain the '124 patent.   IXI asserts that it chose to initiate

21   patent litigation in Texas solely for "cost and convenience."   Dkt. 25-2 ¶ 7; Dkt. 25-3 ¶ 6.

22   

23   [1]   IXI's offensive patent infringement litigations in this District involve IXI patents relating to "mobile tethering" and "mobile hotspot technology."   *E.g.*, Exs. 8 ¶ 12, 9 ¶ 10.   Similarly, with respect to the '124 patent, IXI has alleged that the E.D. Texas defendants, in combination

24   with "Google, Microsoft, and/or Internet servers,…practice steps wherein application software is executed on a distributed environment comprising the mobile communication device and a

25   network server connected to the mobile communication device."   Ex. 10 at 16.

26   [2]   In its offensive patent litigation in this District, IXI has accused "every Samsung Smartphone, Wi-Fi + cellular tablet, and Wi-Fi + cellular laptop that utilizes Android Version 2.2 Froyo and above" as well as "every Samsung smartphone, Wi-Fi + cellular tablet, and Wi-Fi +

27   cellular laptop that utilizes Windows Phone 7 or above."   Ex. 11 at 1 n.1.   With respect to the '124 patent, IXI accuses a subset of these same products, namely "every Samsung smartphone,

28   tablet, watch, and laptop that utilizes Windows Phone 8.1 or above…, Android Version 4.0 Ice Cream Sandwich and above."   Ex. 12 at 1 n.2.

1   Despite the fact that IXI has no connections to the Eastern District of Texas that would motivate

2   filing its suit in that district, IXI maintains that its filing in Texas was supposedly "not for any

3   tactical purpose."   Dkt. 25-2 ¶ 7; Dkt. 25-3 ¶ 6.

4
     **D.    Google's Home Is In The Northern District Of California, And Relevant**
5           **Witnesses And Evidence Are Undeniably Located Here**

6           Google is a Delaware corporation headquartered in this District, in Mountain View,

7   California.   Ex. 15 ¶ 2.   Google's Mountain View headquarters is the strategic center of Google's

8   business.   *Id.* ¶¶ 2-3.   Google employs approximately ████ people full-time at its offices in this

9   District, approximately ████████████████████████   *Id.* ¶ 3.

10          Google employees with knowledge of the design, engineering, and development of the

11  Google software at issue in this case are located in this District.   *Id.* ¶ 5.   This includes software

12  engineers responsible for the design and development of the accused features, and a product

13  manager who works with the accused features.   *Id.*   For example, Yuli Gao is a Google software

14  engineer responsible f███████████████████████████████████████████

15  ████████████████████████████████████████████████████;

16  Omer Baror is a Google software engineer responsible ███████████████████████

17  █████████████████████████████████████████████; and

18  Joel Kalmanowicz is a Google project manager who works on ████████████████

19  ██████████████████████████████   *Id.*   Mr. Gao, Mr. Baror,

20  and Mr. Kalmanowicz are all located in Mountain View, in this District.   *Id.*   Google documents

21  related to its products are normally created and maintained by the employees working on those

22  services and products.   *Id.* ¶ 13.   ████████████████████████████████

23  ████████████████████████████████████████████████████

24  █████████████████████████████████████   *Id.* ¶ 12.

25  Google has no relevant ties to the Eastern District of Texas.   *Id.* ¶¶ 7-11, 13-14.

26  **III.   THIS COURT HAS PERSONAL JURISDICTION OVER IXI**

27          **A.    Legal Standard**

28          District courts must construe all pleadings and affidavits in the light most favorable to the

1 plaintiff, and "must accept the uncontroverted allegations in the plaintiff's complaint as true and

2 resolve any factual conflicts in the affidavits in the plaintiff's favor."   *Avocent Huntsville Corp. v.*

3 *Aten In'l Co., Ltd.*, 552 F.3d 1324, 1329 (Fed. Cir. 2008) (quoting *Silent Drive, Inc. v. Strong*

4 *Indus., Inc.*, 326 F.3d 1194, 1201 (Fed. Cir. 2003); *see also Elecs. For Imaging, Inc. v. Coyle*, 340

5 F.3d 1344, 1349 (Fed. Cir. 2003)).   While the plaintiff bears the burden of demonstrating the first

6 two prongs (*i.e.*, that minimum contacts exist), a plaintiff's burden with respect to the first two

7 prongs is only a *prima facie* burden.   *Id.* at 1328-29.   The defendant then bears the heavy burden

8 of disproving that the exercise of jurisdiction is reasonable and fair.   *See id.* at 1331, 1333-34.

9

10 **B.    IXI Has The Minimum Contacts With California Required For This Court's Exercise Of Specific Jurisdiction**

11                    1.    IXI's relationship to IXI Mobile, Inc. supports personal jurisdiction

12         IXI's ties to its predecessor IXI Mobile, Inc. support this Court's exercise of personal

13 jurisdiction.   In its motion, IXI suggests that IXI Mobile, Inc. is a "forfeited entity" with no

14 control over IXI Mobile (R&D) Ltd. and no relation to IXI IP, LLC.   That is incorrect.   IXI's

15 corporate records show that IXI Mobile, Inc. was the corporate parent of IXI Mobile (R&D) Ltd.;

16 was headquartered in Belmont, California in this District at the time the '124 patent was

17 prosecuted; and developed, produced, and marketed products within this District.   Dkt. 1-1 at Ex.

18 1.   In a recent case, this Court found a patent owner's historical ties to California and entities

19 located in California, supported personal jurisdiction.   In *Google Inc. v. Eolas Techs., Inc.*, No.

20 3:15-cv-05446-JST, 2016 WL 3346529 (N.D. Cal. June 16, 2016) (Tigar, J.), this Court found

21 sufficient jurisdictional ties to California based on the defendant's "longstanding relationship with

22 and significant obligations to [a California resident], [defendant's] past patent commercialization,

23 licensing, and enforcement efforts in California, its prosecution activities conducted from

24 California, its creation and origin in California, and its continuing relationship with two inventors

25 who are still California residents."   *Id.* at *7.   So too here; IXI's predecessor IXI Mobile, Inc.'s

26 longstanding presence and activities in California, and IXI's relationship to IXI Mobile, Inc.

27

28

1  support personal jurisdiction.[3]

2       2.    **IXI's patent prosecution activities are purposefully directed toward this**
             **forum and support personal jurisdiction**

3

4       As explained above, IXI used Farshad Jason Far-hadian, a California attorney, to prosecute

5  and secure the '124 patent.   Mr. Far-hadian is one of only three potential witnesses IXI has

   identified in the Texas actions with relevant knowledge relating to the '124 patent.   Ex. 5.   This

6  demonstrates minimum contacts.   For instance, in *Electronics for Imaging, Inc. v. Coyle*, 340

7  F.3d 1344, 1350-51 (Fed. Cir. 2003), the Federal Circuit held that hiring a California attorney in

8  connection with the prosecution and licensing of the patent in issue constituted "other activities"

9  supporting personal jurisdiction.[4]

10      3.    **IXI's licensing and enforcement activities are purposefully directed toward**
             **this forum and support personal jurisdiction**

11

12  ████████████████████████████████████████████████

13  ████████████████████████████████████████████████

14  ████████████████████████████████████████████████

15  ████████████████████████████████  Courts have routinely held

16  that a patent owner's engagement of a forum resident to conduct licensing or enforcement efforts

17  constitutes "other activities" supporting the exercise of personal jurisdiction over the patent owner.

18  *See, e.g., Radio Sys. Corp. v. Accession, Inc.*, 638 F.3d 785, 790-91 (Fed. Cir. 2011); *Elecs. for*

19  *Imaging*, 340 F.3d at 1350-51; *SanDisk, Corp. v. Round Rock Research LLC*, No. 11-5243, Dkt.

20  _____

21    [3]    Though IXI points to the fact that Google has alleged certain facts "on information and
   belief" relating to the relationship of the various IXI entities, and argues that the Ninth Circuit's
22  ruling in *Ranza* requires Google to "prove that the entities were alter-egos of each other," (Mot. at
   6, n.5, 6), that case is limited to the question of general jurisdiction and does not stand for the
23  proposition that the presence and activities of a defendant's predecessor and parent entity in the
   forum state are irrelevant to show specific jurisdiction.   *See Ranza v. Nike, Inc.*, 793 F.3d 1059,
24  1065 (9th Cir. 2015), cert. denied, 136 S. Ct. 915 (2016) ("We then decide under what
   circumstances a court may attribute a parent company's contacts with the forum state to its foreign
25  subsidiary *for the purpose of exercising general personal jurisdiction* over the subsidiary."
   (emphasis added)).   At best, IXI's argument demonstrates that Google should be permitted to take
26  jurisdictional discovery on the relationship and any agreements between the relevant IXI entities.

27    [4]    The purpose of an attorney joining the bar of a state is to conduct business there, and thus
   the activities of a patentee's out-of-state lawyer licensed in a forum should be as relevant as the
   activities of an out-of-state distributor that conducts business in that forum.   *See Genetic Implant*
28  *Sys., Inc. v. Core-Vent Corp.*, 123 F.3d 1455, 1457 (Fed. Cir. 1997) (addressing relevance of a
   defendant's dealings with an exclusive distributor that conducted business in a forum).

60 at 5 (N.D. Cal. Feb. 16, 2012); *Juniper Networks, Inc. v. Altitude Capital, L.P.*, No. 09-03449, 2010 WL 5141839, at *1, *5-6 (N.D. Cal. Dec. 13, 2010); *see also Various, Inc. v. Jedi Techs., Inc.*, No. 3:16-cv-01833-WHA, Dkt. 56 at 3-7 (N.D. Cal. Jul. 25, 2016) (patentee's engagement of a California resident to sell and license his patents to other entities "could make the exercise of personal jurisdiction in this case fair and just," and at a minimum raised enough of a basis to warrant jurisdictional discovery).

Moreover, IXI has availed itself of this Court as a forum for litigation and has enforced its patents against California companies.   IXI is currently pursuing offensive patent litigation against Apple, a California company, as well as Samsung and Blackberry, in this District.   Though those cases were initiated by IXI in IXI IP, LLC's home forum, the Southern District of New York, they were transferred to this District as the most appropriate forum to determine IXI's patent rights, based in part on IXI's admission that there is "absolutely no dispute" that this District is an appropriate venue for IXI's patent litigation.   *IXI Mobile*, 2015 WL 4720293, at *2.   IXI has further affirmatively initiated patent litigation in this District against at least two other companies, LG and Lenovo.   These cases all involve the same subject matter – mobile communication devices and cellular networks – and many of the same accused products IXI has accused of infringing the '124 patent.   The patents involved in these cases were also prosecuted in California by the same prosecuting attorney, Mr. Far-hadian, that prosecuted the '124 patent.

The Northern District of California has exercised personal jurisdiction over defendants in other cases based on similar facts.   For example, in *Activevideo Networks, Inc. v. Trans Video Elecs. Ltd*., 975 F. Supp. 2d 1083, 1098 (N.D. Cal. 2013), the court found specific jurisdiction based on defendant's licensing and enforcement activity relating to the patent-in-suit.   In that case, the court found that the patent owner's history of enforcing its patents, including the patent-in-suit and related patents, against others in litigation in this District, and its licensing agreements with forum residents resulting from patent enforcement activity, were "part of the calculus" supporting personal jurisdiction.   *Id*.

Similarly, in *Zoove Corp. v. Starpound Corp*., No. 10-cv-06131-EJD (PSG), 2012 WL 3580526, at *4-5 (N.D. Cal. Aug. 17, 2012), the court found that defendant's acts of sending

1  infringement letters to targets in California and other licensing activities in California were

2  sufficient to confer specific jurisdiction when the letters and licensing related to the patent-in-suit.

3  The court deemed the patent owner's acts of sending emails and letters to Zoove, a California

4  resident, relating to licensing, taken together with a "one-off license" with Zoove and the fact that

5  the patent owner's "only business over the last six years" had been its licensing and enforcement

6  efforts directed at California, satisfied the minimum contacts requirement for exercise of personal

7  jurisdiction.  *Id*. at *6-7.

8         Here, IXI's retention of a California attorney to prosecute and secure the '124 patent, ██

9  ████████████████████████████████████████████████████████████████████████████████

10 ████████████████████████████████████████████████, and its other patent

11 enforcement activities in California courts directed at eight California companies, amount to

12 substantial, continuous, and systematic contacts with California supporting personal jurisdiction.

13         4.    IXI seeks to dissect and discount individual facts and fails to address the
                facts as a whole

14         For the reasons discussed above, IXI maintains minimum contacts with California

15 sufficient to justify this Court's exercise of personal jurisdiction.   IXI's motion attempts to chip

16 away at the extensive contacts outlined in Google's complaint by arguing that single acts by

17 themselves are insufficient to support personal jurisdiction.   But this approach ignores the

18 distinction between "single or occasional acts" and "continuous and systematic" in-state activities.

19 The Supreme Court addressed this distinction in *Daimler*, noting that "continuous and systematic"

20 in-state activities, while insufficient to establish general jurisdiction unless they render a defendant

21 at home in the state, will establish specific jurisdiction when they also give rise to the suit.

22 *Daimler AG v. Bauman*, 134 S. Ct. 749, 761 (2014).

23         IXI urges this Court to adopt an improperly rigid framework that views each category of

24 IXI's activities in isolation, discounting each as insufficient to establish specific jurisdiction alone

25 or as irrelevant to the inquiry.   But specific "jurisdiction unquestionably [can] be asserted where

26 the corporation's in-state activity is 'continuous and systematic' and *that activity gave rise to the*

27 *episode-in-suit*."  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853

28

1   (2011) (quoting *International Shoe*, 326 U.S. 310, 317 (1945)) (emphasis in original).   For years,

2   IXI's predecessor IXI Mobile, Inc. operated in California and secured patents using agents located

3   in California.   ████████████████████████████████████████

4   ████████████████████████████████████████████████████████

5   ████████████████████████████████████████████████████████

6   ██████████████████   IXI has also voluntarily prosecuted infringement litigation in

7   California courts and against California companies to pursue its licensing objectives.   Taken

8   together, those contacts establish the fundamental equity of exercising jurisdiction over IXI in this

9   case.

            5.   IXI's legal authorities are inapposite, or support Google

11      IXI cites the Federal Circuit's decision in *Avocent* as justification for treating IXI's patent

12   litigation activities in California as "simply irrelevant" and IXI's ████████████████

13   as "insufficient" to establish specific jurisdiction.   Mot. at 9-11.   IXI is incorrect.   In *Avocent*,

14   the Federal Circuit stated that it had "consistently required the defendant to have engaged in 'other

15   activities' that relate to the *enforcement* or the *defense of the validity* of the relevant patents," and

16   that "the patentee's own commercialization activity…is of no real relevance to the enforcement or

17   defense of a patent."   *Avocent*, 552 F.3d at 1334-35 (emphasis in original).   *Avocent* does not set

18   forth a sweeping rule rejecting the relevance of any activities that do not involve enforcement of

19   the patents-in-suit, let alone activities demonstrating that a patent holding company deliberately

20   targets a forum as part of its patent enforcement business.   *Avocent* acknowledges that sending

21   letters to a forum resident satisfies the first two prongs, which consider the extent and relatedness

22   of the patent owner's contacts with the forum, but instructs that it would be inconsistent with "fair

23   play and substantial justice" to exercise personal jurisdiction based on such letters absent some

24   "other activity."   *Id*. at 1333.   Consideration of fair play and substantial justice relates to the third

25   step of the Federal Circuit's test for personal jurisdiction – "whether assertion of personal

26   jurisdiction is reasonable and fair."   *Celegard, LLC v. SK Innovation, Co.*, 792 F.3d 1373, 1377

27   (Fed. Cir. 2015).   Here, Google has shown IXI engaged in numerous "other activities" directed at

28   this forum, including engaging attorneys and agents in California in connection with the

1   prosecution, marketing, and licensing of the '124 patent, ████████████████████

2   ████████████████████████████████, and initiating and pursuing

3   offensive litigation in this District and against California residents.   Taken together, IXI's "other

4   activities" directed at California demonstrate that it would be "reasonable and fair" for IXI to be

5   subject to jurisdiction in this District.

6       IXI's reliance on the Federal Circuit's ruling in *Red Wing Shoe* for the proposition that

7   courts may not exercise jurisdiction "on the sole basis of licensing attempts" (Mot. at 10) likewise

8   ignores IXI's contacts with California, ████████████████████████████████████

9   In *Red Wing Shoe*, the only enforcement activities at issue were three notice letters, and the only

10  other connection alleged with the forum state were contacts by the patent owner's *non-resident*

11  licensees (and not the patent owner itself) with the forum state.   *See Red Wing Shoe Co., Inc. v.*

12  *Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998).   IXI's and its predecessor's

13  ██████████████████████████████████ is a far cry from three isolated notice

14  letters and illustrate exactly the type of systematic contacts that support personal jurisdiction.

15      IXI's arguments rely heavily on misguided comparisons to this Court's ruling in *Xilinx,*

16  *Inc. v. Papst Licensing GMBH & Co., KG*, 113 F. Supp. 3d 1027 (N.D. Cal. 2015), *vacated in*

17  *part*, *Altera Corp. v. Papst Licensing Co.*, No. 15-1914, Dkt. 73 (Fed. Cir. Jun. 9, 2016) (non-

18  precedential).   But the facts here are markedly different from those in *Xilinx*.   First, unlike the

19  German defendant Papst, which had no U.S. operations or presence, IXI IP LLC, the current

20  owner of the '124 patent, is a U.S. company based in New York.   In addition, IXI Mobile (R&D)

21  Ltd., along with its corporate parent IXI Mobile, Inc., was located for years in Belmont, California

22  and developed, produced, and marketed products in this District.   Moreover, IXI's California

23  licensing campaign is much more extensive than that alleged in *Xilinx*. ████████████████

24  ██████████████████████████████████████████████████████████

25  ██████████████████████████████████████████████████████████

26  ██████████████████████████████████████████████████████████

27  █████████████   *Xilinx*, 113 F. Supp. 3d at 1044-45.   Additionally, in *Xilinx* the defendant's

28  only prior enforcement activities involved *unrelated* patents; here IXI has directed prosecution,

1   ████████████████████ activities directly *relating to the '124 patent* into California, including

2   using California attorneys and agents to obtain the '124 patent and ████████████████████

3   ██████████████████████████████████████████████████[5]   *Id.*

4       Moreover, IXI badly misstates the procedural posture of the *Xilinx* litigation.   (*See* Mot. at

5   4 n.3.)   Xilinx's appeal is still pending before the Federal Circuit.   After this Court dismissed

6   both Xilinx's and Altera's declaratory judgment claims for want of personal jurisdiction, both

7   Xilinx and Altera appealed the Court's ruling to the Federal Circuit.   *Altera Corp. v. Papst*

8   *Licensing Co.*, No. 15-1914, Dkt. 13 (Fed. Cir. Jun. 9, 2016) (non-precedential).   Patentee Papst

9   filed its own infringement action against Xilinx and Altera in the District of Delaware, in which

10  Altera filed declaratory judgment counterclaims identical to those it had asserted in the Northern

11  District of California action.   *Id.*   After the appeal was docketed, the Delaware action was

12  transferred to the Northern District of California and assigned to this Court.   *Id.*   Altera moved to

13  dismiss its appeal and vacate the district court's ruling as moot because its declaratory judgment

14  claims were now before this Court; Xilinx, however, did not dismiss its appeal because it did not

15  assert declaratory judgment counterclaims in the transferred action.   *Id.*   Xilinx's appeal was

16  fully briefed and argued days ago, on September 7, 2016, and is currently pending before the

17  Federal Circuit.   *Id.*

18      Like Altera, the defendants in IXI's litigation in Texas have moved to transfer that

19  litigation to this District pursuant to 28 U.S.C. § 1404.   Though IXI acknowledges this in a

20  footnote in its brief (Mot. at 2-3 n.2), it fails to acknowledge that if the Texas litigation is

21  transferred, IXI's patent rights will be adjudicated in this District regardless of the outcome of this

22  motion.   IXI likewise fails to acknowledge that Xilinx's appeal remains pending before the

23  Federal Circuit.   For at least these reasons, *Xilinx* does not support dismissal of this case.

24

25  ────────────────────────────

26      [5]   And, in contrast to *Xilinx*, the facts alleged by Google show that jurisdictional discovery
    may well reveal additional evidence supporting the Court's exercise of personal jurisdiction,
    including whether the exclusive licensee to the '124 patent, defendant IXI Mobile (R&D) Ltd.,

27  "conducts business" in California, which would be sufficient to establish personal jurisdiction, as
    well as ████████████████████████████████████████████████████

28  ████████████████████.   *See Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d
    1356, 1366 (Fed. Cir. 2006); *Various*, No. 3:16-cv-01833-WHA, Dkt. 56 at 6-7.

C.        The Exercise Of Personal Jurisdiction Over IXI Is Reasonable And Fair

The last prong of personal jurisdiction looks to whether assertion of personal jurisdiction is "reasonable and fair."   *See, e.g., Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001). IXI devotes its discussion of personal jurisdiction to arguing that general jurisdiction is lacking, and that IXI's contacts with California are not "sufficient to establish personal jurisdiction."   Mot. at 5-12.   IXI conspicuously fails to address this prong of the analysis, and by failing to carry its heavy burden apparently concedes that, if this Court concludes that IXI has the requisite minimum contacts with California, the Court's exercise of personal jurisdiction over IXI would be "reasonable and fair."   *Inamed*, 249 F.3d at 1363 ("Where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." (citation and quotations omitted)).   Moreover, IXI could not credibly maintain that it is not reasonable and fair for the Court to exercise personal jurisdiction over it given that IXI voluntarily prosecuted actions in this Court and is continuing the prosecution of actions that were transferred here.

In view of the substantial contacts IXI has with California, as discussed above, it is "reasonable and fair" for this Court to exercise personal jurisdiction over IXI.   *Id.*

D.        In The Alternative, The Court Should Permit Google To Conduct Jurisdictional Discovery, Or Transfer This Case To the Southern District Of New York

The Court has personal jurisdiction over IXI.   To the extent that the Court disagrees, Google respectfully requests an order allowing it to conduct limited jurisdictional discovery, and to supplement its opposition to IXI's motion accordingly.   Jurisdictional discovery is warranted "where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary."   *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 n.1 (9th Cir. 1977); *see also Twentieth Century Fox Int'l Corp. v. Scriba*, 385 Fed. App'x 651, 652 (9th Cir. 2010) (vacating dismissal for lack of personal jurisdiction and remanding with instructions to permit jurisdictional discovery).   Where further discovery on an issue "might well" demonstrate facts sufficient to constitute a basis for jurisdiction, it is an abuse

1    of discretion to deny it.  *Harris Rutsky & Co. Ins. Serv. v. Bell & Clements*, 328 F.3d 1122, 1135

2    (9th Cir. 2003).   All that is required is a "'colorable basis' for jurisdiction, or 'some evidence'

3    constituting a lesser showing than a prima facie case," in order for jurisdictional discovery to be

4    granted.   *Calix Networks, Inc. v. Wi-Lan, Inc.*, No. C-09-6038, 2010 WL 3515759, at *4 (N.D.

5    Cal. Sept. 8, 2010).   Here, there is far more than a colorable basis for jurisdiction, and

6    jurisdictional discovery may well reveal additional evidence .[6]  *See supra*, n. 5.

7        If this Court finds want of personal jurisdiction, the Court may in the interest of justice

8    transfer this case to any other district in which this Case could have been brought pursuant to 28

9    U.S.C. § 1631 and/or 28 U.S.C. § 1406.   "[T]ransfer will generally be in the interest of justice,

10   unless it is apparent that the matter to be transferred is frivolous or was filed in bad faith."  *Amity*

11   *Rubberized Pen Co. v. Mkt. Quest Grp., Inc.*, 793 F.3d 991, 996 (9th Cir. 2015).   As the *Amity*

12   court makes clear, this is a "low bar" and "will usually involve a very limited inquiry by the

13   transferring court."  *Id.*   It is indisputable that this action could have been brought in the

14   Southern District of New York:   IXI IP, LLC, the owner of the '124 patent, is incorporated in

15   New York, and its principal place of business is in New York, New York, within that district.   IXI

16   Mobile (R&D) Ltd., the previous owner of the '124 patent and current exclusive licensee of the

17   '124 patent, transferred the '124 patent to New York resident IXI IP, LLC and has continuous

18   contacts with New York due to its ongoing relationship, agreement, and obligations to IXI IP,

19   LLC.   In addition, IXI's witnesses are located in or near New York:   IXI IP, LLC's counsel and

20   Manager Steve Pederson is located in New York, and the inventor of the '124 Patent ,Vladimir

21   Drukin, is located in New Jersey.   Ex. 5.   Moreover, IXI, itself, chose New York as forum to

22   enforce its alleged patent rights.  *See generally IXI Mobile*, 2015 WL 4720293.

23       Thus, if this Court determines that personal jurisdiction does not exist and further declines

24   to grant jurisdictional discovery, a transfer to the Southern District of New York is appropriate in

25   the interests of justice.

26   _____

27   [6]    To the extent that jurisdictional discovery is necessary, Google requests ten interrogatories,
     ten document requests, and one Rule 30(b)(6) deposition of IXI to be completed within 45 days
     from any order granting jurisdictional discovery.   Google also requests leave to file a
28   supplemental opposition, not to exceed 15 pages, within fourteen days after discovery has
     completed.

## IV.    VENUE IS PROPER IN THE NORTHERN DISTRICT OF CALIFORNIA

IXI alleges that even if this Court concludes it has personal jurisdiction over IXI, the Court should nevertheless transfer this case to Texas based on Federal Circuit precedent and the 28 U.S.C. § 1404(a) convenience factors.    Mot. at 12-18.    IXI is wrong on both counts.

### A.    The Northern District of California Is The Most Convenient Forum

When analyzing a motion to transfer under Section 1404(a), this Court has assessed: "(1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interest of justice."    *Park v. Dole Fresh Vegetables, Inc*., 964 F. Supp. 2d 1088, 1093 (N.D. Cal. 2013). This Court has also considered "additional factors," including "(1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof."    *Id.* (citing *Jones v. GNC Franchising, Inc*., 211 F.3d 495, 498-99 (9th Cir. 2000)).    "No single factor is dispositive, and a district court has broad discretion to adjudicate motions for transfer on a case-by-case basis."    *Id.* (quoting *Ctr. for Biological Diversity v. Kempthorne*, No. 08-1339, 2008 WL 4543043, at *2 (N.D. Cal. Oct. 10, 2008)).

IXI's transfer arguments all attempt to gloss over a key fact in a single footnote (Mot. at 2 n. 2):    All defendants in the E.D. Texas action believe this District is the most convenient forum, and have moved to transfer the case to this District.    *See* Ex. 16.    IXI does not even acknowledge the compelling § 1404 convenience factors evidence already presented by the defendants in that suit, and from non-parties Google and Microsoft.[7]    *See* Ex. 17 (BlackBerry), Ex. 18 (HTC), Ex. 19 (Samsung), Ex. 20 (ZTE), Ex. 21 (Microsoft), Ex. 15 (Google).    For instance, the E.D. Texas defendants all agree that "[t]he parties, accused functionalities, asserted patents, inventors, and key third-party witnesses have little, if any, relationship to the Eastern District of Texas" and that the

---

[7]    Microsoft recently filed an unopposed motion to intervene in the E.D. Texas action, which was granted, citing the "very early stages" of the case and direct and substantial protectable interest in the outcome of the case.    Ex. 22 at 2, 4.

1  Northern District of California is "a clearly more convenient forum for the case." Ex. 16 at 1-2.

2  Because each of the § 1404 factors weighs strongly in favor of the Northern District of California,

3  this Court should decline to transfer this case.[8]

4           1.     The interests of justice strongly favor California

5           IXI alleges that the interests of justice "strongly favor" transfer, but only cites alleged

6  resources already invested by the E.D. Texas court in support of its allegation. Mot. at 15-16.

7  IXI's own acknowledgement that the E.D. Texas court has not even received opening briefing on

8  claim construction (Mot. at 15) or issued any substantive opinions regarding the scope or

9  interpretation of the patent-in-suit belies its position. Indeed, the claim construction hearing in

10  the E.D. Texas action is not set until November 30, 2016, opening experts reports will not be

11  served until mid-February, and dispositive motions are not due until the end of March of 2017.

12  Dkt. 25-1 at Ex. 1. Considering that these substantive deadlines are still many months away and

13  the E.D. Texas court's sizable docket of patent filings, it is very probably that the E.D. Texas court

14  has not invested much – if any – time in learning the technology at issue or IXI's specific

15  infringement allegations.[9] The interests of justice and judicial economy are therefore not at odds

16  with maintaining this action in this District.

17           IXI also ignores other evidence relating to the interests of justice. For instance, court

18  congestion is a factor sometimes used in this District to determine the most appropriate venue.

19  *See Google Inc. v. Rockstar Consortium U.S. LP,* No. C 13-5933 CW, 2014 WL 1571807, at *10

20  (N.D. Cal. Apr. 17, 2014). As this Court is aware, the Eastern District of Texas receives the

21  lion's share of new patent infringement filings. In 2015, 44.2% of all new patent cases – over

22  2500 of all new patent filings – were filed in the Eastern District of Texas, compared with just

23  3.9% in this District. Ex. 25 at 19. Judges Gilstrap and Payne in the Eastern District of Texas

24

25  ―――――――――――

     [8]    As explained *infra*, Google's chosen forum is plainly the most convenient. If this Court is
26  nevertheless inclined to transfer, Google contends that that the Southern District of New York,
     where IXI IP is incorporated, is the next-most-convenient forum. *See supra*, § III(D).

27     [9]    Moreover, as IXI acknowledged in its motion (Mot. at 15), Microsoft filed a motion to
     intervene in the E.D. Texas action on August 3, 2016, which the E.D. Texas court granted on
28  August 19, 2016. Ex. 23. IXI has just filed its Answer to Microsoft's Intervenor Complaint on
     August 31, 2016. Ex. 24. The intervention of Microsoft as a party to the E.D. Texas action
     would likely necessitate a new schedule with extended deadlines to accommodate this new party.

1   were assigned to 40.2% of the new patent filings in 2015 – over 2750 new patent cases.   *Id.* at 23.

2   This heavy patent case load – in addition to its non-patent cases – results in considerable court

3   congestion for a court already overburdened with a backlog of cases filed prior to 2015.

4            Moreover, this District "has the greater interest in this litigation because the claims here

5   will 'call into question the work and reputation of several individuals residing in or conducting

6   business in this community.'"   *Google*, 2014 WL 1571807, at \*10 (quoting *In re Hoffman–La*

7   *Roche,* 587 F.3d 1333, 1336 (Fed. Cir. 2009)).   Indeed, "[c]ourts in the Eastern District of Texas

8   have recognized that the 'Northern District of California has an interest in protecting intellectual

9   property rights that stem from research and development in Silicon Valley.'"   *Id.* (quoting *Affinity*

10  *Labs of Texas v. Samsung Elecs. Co., Ltd.,* 968 F. Supp. 2d 852, 855 (E.D. Tex. 2013)).   For all

11  these reasons, the interests of justice strongly weigh against transfer.

12                   2.      California is more convenient for almost all party and non-party witnesses

13           As IXI acknowledges in its motion, convenience to witnesses is an "important factor."

14  Mot. at 16.   Indeed, "[t]he convenience and availability of witnesses is 'probably the single most

15  important factor' in the transfer analysis."   *Google*, 2014 WL 1571807, at \*9 (quoting *In re*

16  *Genentech, Inc.,* 566 F.3d 1338, 1343 (Fed. Cir. 2009).

17           This District is plainly more convenient than the Eastern District of Texas.   Google

18  employees with knowledge of the design, engineering, and development of the accused Google

19  software are all located in this District.   Ex. 15 ¶ 5.   This includes software engineers responsible

20  for the design and development of the accused features and a product manager who works on the

21  accused features.   *Id.*   Specifically, at least Google employees Yuli Gao, Omer Baror, and Joël

22  Kalmanowicz are likely to possess pertinent information regarding the accused functionalities.

23  *Id.*   Mr. Gao, Mr. Baror, and Mr. Kalmanowicz are all located in Mountain View, in this District.

24  *Id.*   No Google employees involved in the design, development or management of the accused

25  Google software are located in the Eastern District of Texas.   *Id.* ¶ 7.   Indeed, "[i]n patent

26  infringement cases, the bulk of the relevant evidence usually comes from the accused infringer.

27  Consequently, the place where the [accused infringer's] documents are kept weighs in favor of

28  transfer to that location."   *Genentech,* 566 F.3d at 1345 (quoting *Neil Bros. Ltd. v. World Wide*

*Lines, Inc.*, 425 F. Supp. 2d 325, 330 (E.D.N.Y. 2006)).   Google's documents relating to its products – which are of paramount importance to the present action – are created and maintained by the employees working on those products in this District.   Ex. 15 ¶ 13.   ███████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████   *Id.* ¶ 12.   Google has no relevant documents in E.D. Texas.   *Id.* ¶ 14.

At least some of IXI's witnesses and relevant documents are also likely in this District – but none are in the Eastern District of Texas.   As indicated above, IXI's predecessor, IXI Mobile, Inc., was headquartered in Belmont, California.   *See supra* at § III(B).   Witnesses with knowledge about this predecessor's products, sales and marketing activities, attempts to license the patented technology, and prior art are likely located in this District.   At least IXI Mobile, Inc.'s prior CEO, Mr. Amit Haller, also resides in this District.   *Id.* § II(A).   The only IXI employee listed in IXI's Initial Disclosures in the E.D. Texas action who may have knowledge to support IXI's claims is Steve Pederson, a Manager for IXI.   Ex. 5 at 2.   Mr. Pederson is located in or near New York.   Ex. 16 at 5.   The inventor of the '124 patent, Vladimir Drukin, resides in New Jersey.   *Id.*   Accordingly, IXI's relevant documents and witnesses are located in New York, New Jersey, Israel, and this District – not the Eastern District of Texas.

Other highly relevant witnesses would also find this District more convenient.   The '124 patent was prosecuted by a California attorney working at a California law firm:   Farshad Jason Far-hadian, of Century IP Law Group, located in Newport Beach, California.   Exs. 3, 4.   Mr. Far-hadian is an active member of the State Bar of California and is currently located in Newport Beach, California.   Ex. 4.   Notably, Mr. Far-hadian is one of only three witnesses IXI identified in its Initial Disclosures in Texas as having relevant information relating to the '124 patent.   Ex. 5.   Mr. Far-hadian's travel to this District would be plainly more convenient than his travel to the Eastern District of Texas.

████████████████████████████████████████████████

████████████████████████████████████████████████████

1 ████████████████████████████████████████████████████

2 ████████████████████████████████ *See supra* § II(B).   All of

3 these witnesses would find this District more convenient.

4     IXI argues that the location of non-party witnesses of ZTE, BlackBerry, and Samsung

5 weighs in favor of transfer.   Mot. at 16-17.   While these non-parties may have operations in E.D.

6 Texas, IXI ignores the undisputed evidence presented in the E.D. Texas defendants' motion to

7 transfer, including:

8     •   The defendants in the E.D. Texas action agree that "Google is the most relevant"
   party—not ZTE, BlackBerry, or Samsung—because Google provides the accused

9         software to the E.D. Texas defendants (Ex. 16 at 3-4);



10

11

12

13

14

15

16

17     Moreover, BlackBerry's principal place of business is located in San Ramon, California,

18 which is within this District, and it has offices in San Mateo and Sunnyvale, both of which are

19 located in this District.   *Id.* at 5.   BlackBerry's witnesses can also "more easily work from, travel

20 to, and access" this District than the Eastern District of Texas.   *Id.* at 7.   ████████████████



21

22

23

24

25

26

27     In short, IXI completely ignores the undisputed evidence that no E.D. Texas defendant has

28 "facilities located in [E.D. Texas] relevant to design, development, or integration of the specific

1    features accused here" and all "employees [of E.D. Texas defendants] with relevant information –

2    including all of the employees with design, development, and integration knowledge for the

3    accused functionalities – are predominantly located in NDCA or in locations more convenient to

4    NDCA than to the Eastern District." *Id.* at 5-6.   This factor weighs strongly against transfer.

5                    3.    The Northern District of California is more convenient for the parties

6        IXI alleges that Texas is the "most convenient forum for all parties."   Mot. at 17.   This

7    allegation is surprising:   Neither party to this suit has *any* relevant connection to Texas.

8    Google's Mountain View headquarters is located in the Northern District of California, which is

9    "the strategic center of Google's business."   Ex. 15 ¶¶ 2-3.   Google also employs approximately

10   30,500 people full-time at its offices in this District, approximately 45% of Google's total

11   worldwide employees.   *Id.* ¶ 3.   Indeed, Google has no offices, facilities, or employees in the

12   Eastern Distract of Texas.   *Id.* ¶ 7.

13       Plaintiffs IXI IP and IXI R&D are based in New York and Israel, respectively – not Texas.

14   Thus, Texas is not the "center of gravity," as IXI alleges.   Mot. at 17.   In fact, this District offers

15   direct flights from both New York and Israel, while there are no such direct flights to Marshall,

16   Texas or to Shreveport, Louisiana.   Exs. 26, 27.   The expected travel time from New York to San

17   Francisco is a 5 hour and 50 minute direct flight, (Ex. 28), while a commute from New York to

18   Marshall, Texas would involve a non-direct flight (one or more stops) to Shreveport along with a

19   forty mile drive for a total travel time of approximately 7 hours, or a direct flight to Dallas, Texas

20   followed by a 175 mile drive for a total travel time of approximately 6 hours.   Exs. 29-32.   The

21   expected travel time from Tel Aviv to San Francisco is a 15 hour direct flight, (Ex. 33), while a

22   commute from Tel Aviv to Marshall, Texas would involve two or more stops on a flight to

23   Shreveport along with a forty mile drive for a total travel time of over 20 hours, or a non-direct

24   flight to Dallas, Texas followed by a 175 mile drive for a total travel time of approximately 22

25   hours.   Exs. 34, 35.   In short, this District is plainly more convenient for the parties.

26                    4.    Google's choice of forum should control

27       "In motions to transfer venue, there is a strong presumption in favor of plaintiff's choice of

28   forum."   *Royal Queentex Enters. v. Sara Lee Corp.*, No. C-99-4787 MJJ, WL 246599 at *2 (N.D.

1    Cal. Mar. 1, 2000).    To upset Google's choice of forum, IXI "bears the burden of overcoming

2    this presumption to demonstrate that the balance of inconveniences substantially weighs in favor

3    of transfer."    *Id.* at *3; *see also Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834,

4    843 (9th Cir. 1986).    IXI cannot meet this heavy burden.

5          IXI argues, without any support whatsoever, that Google has "extensive operations in

6    Texas."    Mot. at 17.    This assertion is false.    In fact, as IXI knows from the E.D. Texas

7    defendants' motion to transfer, Google "has no offices of facilities in the Eastern District of

8    Texas" and maintains only "relatively small offices"[10]  in Austin and Dallas having ***no employees***

9    involved in the accused instrumentalities.    Ex. 15 ¶ 7.    Second, IXI alleges that "IXI's party

10   witnesses and the majority (if not all) third-party witnesses are located in or closer to Texas" and

11   so this factor should be given less weight.    Mot. at 17.    Once again, this assertion finds no

12   support in the record, nor does IXI even attempt to cite any support in its motion.    As explained

13   above, IXI's relevant witnesses are located in New York, New Jersey, Israel, and this District –

14   not the Eastern District of Texas.    *See supra* § IV(A)(2).    Almost all of Google's party witnesses

15   are in the Northern District of California.    *Id.*    While some non-party witnesses are located in

16   geographically disperse locations, many non-party witnesses are located in this District, and the

17   witnesses associated with all E.D. Texas defendants are either in this District or find this District

18   more convenient.    *Id.*    Google's choice of forum therefore weighs heavily against transfer.

19          5.    <u>Relevant agreements were negotiated and executed in California</u>

20          IXI argues Google has not alleged that the location of any relevant agreements is at issue

21   here (Mot. at 18), but Google did allege that the '124 patent was prosecuted by a California

22   attorney working at a California law firm, and this observation implicates several important

23   agreements.    Dkt. 1 at ¶ 8.    Patent Office records and the prosecution history of the '124 patent

24   reveal that both the declaration executed by the sole inventor—Vladimir Drukin—and the

25   assignment agreement from the sole inventor to IXI were both negotiated and processed in

26   California through IXI's prosecution counsel, Century IP Law Group.    Exs. 36, 37.    These two

27

28
_____

[10]  ██████████████████████████████████████████████████
████████████████ Ex. 15 ¶¶ 10-11.

1    legal agreements will undoubtedly become important topics for future depositions of Mr. Drukin

2    and the prosecuting attorney and weigh heavily against transfer.    *Jones*, 211 F.3d at 498.

### 6.    Both IXI and Google have substantial contacts with California

4        IXI also ignores the substantial contacts both parties have with this District.    Mot. at 18.

5    As discussed above in connection with the section on personal jurisdiction, Google's home is in

6    this District.    *See supra* § II(D).    IXI also maintains regular and systematic contacts with this

7    District due to three other IXI patent litigations pending in this District,[11]  including cases against

8    Samsung and BlackBerry.    *See supra* § II(B).    Defendants patent owner IXI IP, LLC and its

9    exclusive licensee IXI Mobile (R&D) Ltd.'s predecessor, and IXI Mobile (R&D) Ltd.'s corporate

10   parent, IXI Mobile, Inc., was founded and located in Belmont, California, within this District, at

11   the time the '124 patent was prosecuted and until at least 2008.    *See supra*, § II(A).    IXI Mobile,

12   Inc. and its subsidiary IXI Mobile (R&D) Ltd. developed and commercialized products in

13   California, including the IXI "Ogo" line of mobile devices.    *Id.*    At one time, IXI Mobile, Inc.

14   had over 130 employees, and witnesses with knowledge about IXI Mobile, Inc.'s products, sales

15   and marketing activities, and attempts to license the patented technology, many of who

16   undoubtedly are located in this District.    *Id.*    Indeed, IXI Mobile, Inc.'s prior CEO, Amit Haller,

17   also resides in this District.    *Id.*

18       Neither party has any relevant contacts in the Eastern District of Texas.    As indicated

19   above, Plaintiffs IXI IP and IXI R&D are based in New York and Israel, respectively.    Mot. at 2.

20   The only IXI employee listed in IXI's Initial Disclosures who may have knowledge to support

21   IXI's claims is Steve Pederson, a Manager for IXI.    Ex. 5 at 2.    Mr. Pederson is located in or near

22   New York, not Texas.    Ex. 16 at 5.    No Google employees involved in the design, development

23   or management of the accused Google software are located in the Eastern District of Texas.    Ex.

24   15 ¶ 7.    Indeed, Google has no offices, facilities, or employees in the Eastern District of Texas.

25   *Id.*    Because both IXI and Google have substantial contacts with this District, and none with the

26   Eastern District of Texas, this factor weighs heavily against transfer.

27   —————————————

28       [11]    IXI's assertion that its only contact with California is "another lawsuit involving unrelated patents that was involuntarily transferred to California" is flatly wrong.    Mot. at 18.    IXI has previously *initiated* patent litigation in this District against Lenovo and LG.    *See supra*, § II(B).

1      7.    <u>The contacts relating to Google's cause of action are all in this District</u>

2          IXI completely fails to address several other important factors considered by this Court in

3    evaluating motions to transfer under Section 1404, such the location of the contacts relating to

4    plaintiff's cause of action.    *See Park,* 964 F. Supp.2d at 1093.    This cause of action relates to

5    Google's alleged infringement of the '124 patent.    As discussed above, the bulk of the contacts

6    relating to Google's alleged infringement – including all the Google documents and witnesses

7    relevant to the issue of infringement – are located in this District, and none are located in Texas.

8    *See supra* §§ IV(A)(2)-(3).    This factor therefore weighs against transfer.

9      8.    <u>The differences in the costs of litigation in the two forums</u>

10         Litigating the case in this District would result in reduced litigation costs, but IXI ignores

11    this factor.    The defendants in the E.D. Texas action agree that "Google is the most relevant"

12    party because Google provides the accused software to the E.D. Texas defendants.    Ex. 16 at 3-4.

13    The resolution of this case would therefore likely resolve common infringement issues for all E.D.

14    Texas defendants, including Samsung, HTC, ZTE, and BlackBerry – resulting in reduced

15    litigation costs.    Moreover, because the bulk of relevant Google witnesses and documents are

16    already in this District (*see supra* §§ IV(A)(2)-(3)), litigation costs would be minimized by

17    proceeding with the case here and not in Texas.    This factor therefore weighs against transfer.

18      9.    <u>The availability of compulsory process</u>

19         This Court also considers the availability of compulsory process to compel attendance of

20    unwilling non-party witnesses – yet another factor ignored by IXI in its motion.    *See Park,* 964 F.

21    Supp. 2d at 1093.    This factor again weighs heavily against transfer because several relevant

22    witnesses reside, are employed, or regularly transact business in person in California or within 100

23    miles of this District, including:    Mr. Far-hadian, the prosecuting attorney, who is located in

24    Newport Beach, California; ███████████████████████████████████

25    ███████████; and IXI Mobile, Inc.'s prior CEO, Amit Haller, who resides in this District.

26    *See supra* § IV(A)(2).    Compulsory process may be required to compel attendance of one or more

27    of these witnesses at a deposition or trial, but such process may not be available from the Eastern

28    District of Texas.    *See* Fed. R. Civ. P. 45(c)(1).

1      10.    The ease of access to sources of proof favors this District

2          IXI overlooks another highly pertinent factor:   The ease of access to sources of proof.

3    *See Park,* 964 F. Supp. 2d at 1093.   This factor also strongly favors this District.   As discussed

4    above, almost all of the relevant documents and witnesses reside in this District, whereas none are

5    in the Eastern District of Texas.   *See supra* at §§ IV(A)(2)-(3).   In addition, the relevant Google

6    documents relating to the accused functionality are created, maintained, and managed in this

7    District, resulting in increased ease of access to the sources of proof supporting Google's

8    declaratory judgment claim of non-infringement.   *Id.* § IV(A)(2).

9          For all the foregoing reasons, this District is the most convenient forum because every

10   Section 1404 factor plainly and overwhelmingly favors this District.   IXI's motion in the

11   alternative to transfer this case to the Eastern District of Texas should therefore be denied.

12   **B.    *DataTern* and *Straight Path* Are Inapposite**

13         IXI attempts to use dicta as precedent, but fails.   *DataTern* involved subject matter

14   jurisdiction, not personal jurisdiction or venue.   *Microsoft Corp. v. DataTern, Inc*., 755 F.3d 899,

15   904 (Fed. Cir. 2014).   In concluding Microsoft did not have subject matter jurisdiction for at least

16   one of the patents-in-suit, *DataTern* noted as such in dicta – citing the "first-to-file" rule.   *Id.*

17   Here, IXI challenges venue—not subject matter jurisdiction – and *DataTern* has no bearing.

18   Moreover, the sole case cited by the *DataTern* court for its dicta, *Futurewei Techs., Inc. v. Acacia*

19   *Research Corp*., 737 F.3d 704, 708 (Fed. Cir. 2013), invoked the first-to-file rule, which is plainly

20   not applicable here:   The first-filed case between Google and IXI is the present case, ***not*** the E.D.

21   Texas case.   Other non-practicing entities, like IXI, have already tried – and failed – to leapfrog

22   prior-filed actions in similar situations by arguing "substantially the same" parties were

23   implicated.   *See, e.g., Google*, 2014 WL 1571807, at *9.   IXI cannot escape the fact that the first-

24   filed suit between Google and IXI is this suit, pending in the Northern District of California.

25         In *Amazon.com, Inc. v. Straight Path IP Grp. Inc*, No. 5:14-CV-04561-EJD, 2015 WL

26   3486494 (N.D. Cal. May 28, 2015), a court in this District applied the same dicta from *DataTern*

27   to facts distinguishable from those in this case and is hence inapposite for the same reasons.   In

28   *Straight Path*, there was evidence that "Amazon could defend its customers and efficiently and

---

-24-

1  effectively participate in [the other action]."  *Id.* at *6.   The *Straight Path* court then went on to

2  analyze all the § 1404(a) factors and concluded that "the judicial efficiency and convenience

3  considerations" weighed in favor of transferring.   *Id.* at *7-9.   Here, each of the named

4  defendants in the E.D. Texas action, along with Microsoft and Google, believe the Northern

5  District of California is the more convenient forum – and the overwhelming factual record

6  supports that conclusion, as noted above.

7      IXI completely ignores the apt precedent from this District in *Google Inc. v. Rockstar*

8  *Consortium U.S. LP*, where the court declined to dismiss or transfer a declaratory judgment action

9  in favor of an earlier-filed infringement action brought in the Eastern District of Texas against

10  Google's customers based on virtually indistinguishable facts.   2014 WL 1571807, at *10.

11  There, Judge Wilken concluded – as this Court should here – that the court had personal

12  jurisdiction over the defendant and a transfer to the Texas was inappropriate.[12]   *Id.* at *9-10.

13  **V.      CONCLUSION**

14      For the aforementioned reasons, IXI's motion to dismiss Google's complaint for

15  declaratory judgment of non-infringement, or in the alternative transfer venue, should be denied.

16

17

18

19

20

21

22

23

24

25

26

27

28
___

[12]    IXI also overlooks the Federal Circuit's granting of a petition for a writ of mandamus ordering the Eastern District of Texas to stay the pending case in that district until the resolution of the proceeding in this District.   *In re Google Inc.*, 588 Fed. App'x 988 (Fed. Cir. 2014).

DATED: September 12, 2016          Respectfully submitted,

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By: */s/ Patrick D. Curran*

Sean Pak (Bar No. 219032 (CA))
seanpak@quinnemanuel.com
Antonio M. Sistos (Bar No. 238847 (CA))
antoniosistos@quinnemanuel.com
Brian E. Mack (Bar No. 275086 (CA))
brianmack@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
(415) 875-6600
(415) 875-6700 (facsimile)

Patrick D. Curran (Bar No. 241630 (CA))
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000
(212) 849-7100 (facsimile)

Meghan Bordonaro (Bar No. 269236 (CA))
meghanbordonaro@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
(650) 801-5000
(650) 801-5100 (facsimile)

*Attorneys for Google Inc.*

## ATTESTATION

I, Brian E. Mack, am the ECF user whose ID and password are being used to file the foregoing document.  In compliance with Civil L.R. 5-1(i)(3), I hereby attest that Patrick D. Curran has concurred in this filing.

Dated:  September 12, 2016          */s/ Brian E. Mack*
                                      Brian E. Mack